# SUPREME COURT.

ALLEN NIMS agt. STELLA SABINE and another.

When a judgment creditor dies and his executor is appointed, who, within a year from the death, applies by affidavit to the court, without notice to the judgment debtor, and obtains an order reviving the judgment in the name of the executor, and authorizing an execution on which real estate is afterwards sold :

*Held*, in an action of ejectment by the purchaser, that the execution was *voidable*, *not void*, and one not holding under the judgment debtor could not raise the question.

In such case the sale is good, though more than ten years have elapsed since the docket of the judgment, and no lien is necessary to authorize a sale as against the defendant in the execution or trespassors.

When defendant is in possession, without right, after the determination of a life estate, no notice to quit is necessary.

*Jefferson Co. Circuit, Sept.,* 1872.

THIS cause having been duly called in its order upon the calendar, and a trial by jury having been duly waived by the respective parties in open court, and the court thereupon, without a jury, having proceeded to hear the proofs and allegations of the parties, and having duly considered the same, finds as matter of fact :

That on the 31st day of Dec., 1828, William Smith, as receiver of the estate of William Waring, deceased, duly conveyed to Eben H. Sabine the premises described in the complaint, who afterwards entered into possession thereof, and on the 3d day of Dec., 1847, conveyed the same to George W. Hungerford, who went into possession thereof.

That said Hungerford, on the 8th March, 1848, executed to Eben H. Sabine a lease of said premises for the term of the lives of Ebenezer Sabine and Clarissa his wife· and the survivors of them, said Ebenezer and Clarissa being the parents of said Eben, and under said lease said Ebenezer and

Clarissa occupied said premises until the death of said Clarissa in Dec, 1871, said Ebenezer having previously died; and that the defendants, who are the children of said Ebenezer and Clarissa, lived with their parents to their death and the death of their mother, and thereafter continued in possession up to the commencement of this suit, and still are in possession.

That on the 26th of Oct., 1850, said George W. Hungerford and wife conveyed the said premises to Henry Holmes, and on the 18th April, 1853, Thomas Hungerford duly recovered, in the supreme court, a judgment against said Holmes for $4,383 32 damages and costs, which judgment was, at said date, duly docketed in said county of Jefferson where said premises are situated.

That on the 1st day of Dec., 1853, an execution was duly issued on said judgment, and in Dec., 1854, a payment of $3,000 was made on said judgment.

That on April 9th, 1862, the said Thomas Hungerford died, and thereafter, on the 14th May, 1862, letters testamentary upon the will of said Thomas were duly issued to James F. Starbuck, executor in said will named, by the surrogate of Jefferson county, and said Starbuck took on himself the duties of said trust.

That on the 4th day of April, 1863, the said Starbuck, as such executor, applied by affidavit to said supreme court, and obtained an order reviving the said judgment in the name of said executor, and substituting him as plaintiff, and giving him leave to issue execution on said judgment for the balance due thereon, being the sum of $1,884.14, and in pursuance of said order an execution was duly issued on said judgment on the 6th April, 1863, and delivered to the sheriff of Jefferson county who levied on the said premises, and on the 10th day of June, 1863, duly sold the same to Morris Bannister, and executed to him a certificate of sale.

That on the 31st day of August, 1864, Gilead W. Candee, a judgment creditor of said Holmes, duly redeemed the said

premises, and on the 13th Sept., 1864, the sheriff executed to said Candee a sheriff's deed thereof in due form of law, and on the 5th Oct., 1870, said Candee conveyed the same to plaintiff.

That said plaintiff, before the commencement of this suit, and after the death of said Clarissa Sabine, demanded posses--sion of said premises of the defendants, and they refused to deliver the same, and this action was commenced on the 13th day of March, 1872.

That the value of the use and occupation of said premises from the death of said Clarissa to the commencement of this action, is the sum of twenty-five dollars.

As matter of law, the said court finds :

That the plaintiff, at the time of the commencement of this action, was the owner in fee of said premises, and entitled to the possession thereof.

That the plaintiff is entitled to recover of the defendants the possession of said premises and the sum of twenty-five dollars for the value of the use and occupation to the commencement of this actioa.

And judgment is ordered accordingly in favor of said plaintiff against the defendants and the costs of this action.

M. H. MEREDIN, *for plaintiff.*
JOHN LANSING, *for defendants.*

HARDIN, *J.*—The defendant's learned counsel is correct in assuming that after the lapse of a year from the death of the plaintiff in a judgment, the remedies presented by the Code for revival of judgment and for leave to issue execu-cution is by action and not by motion (*Code*, § 121 ; *Jay agt. Martine*, 2 *Duer*, 654 ; *Wheeler* agt. *Dakin*, 12 *How.*, 537 ; *Swift* agt. *Flanagan*, 12 *How.*, 438 ; *Miller* agt. *Ross-man*, 15 *How.*, 10 ; *Bellinger* agt. *Ford*, 21 *Barb.*, 311).

In the last case it was held that the order was void as the party was dead, and had been for over two years when the

order was granted for leave to issue execution, and no executor or administrator had been appointed to represent the estate of the plaintiff in the judgment.

And it was there held that an execution issued after five years was not void but only voidable (*See op. of* BOCKES).

But in this case, an executor who had been duly appointed and qualified to represent the estate of the deceased plaintiff, and, in law, entitled to collect and control the judgment, applied to the court on motion and obtained an order reviving the suit and authorizing execution to issue.

Had the defendant appeared and taken an objection the court would have held doubtless that the relief sought should not be granted upon motion, and turned the executor over to an action, which is a substitute for the old writ of *scire facias* (*Ireland, ex.,* agt. *Litchfield,* 22 *How.,* 178; *Cameron* agt. *Young,* 6 *How.,* 372 ; 28 *How.,* 514 and 516).

But in this case no objection was taken by the defendant in the judgment and execution, and none is now taken by a party to the record.

The defendant here seeking to avoid the effect of the order and execution are strangers to the record, and not in a situation to avail themselves of irregularities, or to escape the force of a voidable execution (1 *Lansing,* 405).

The court had jurisdiction of the subject matter and of the parties, and permitted an order to be entered which remained in force, and the property of the defendant in the execution was sold, and has come through the proceedings to a purchaser in good faith, whose title is to be upheld, unless the proceedings through which it was derived, are wholly void.

The order and execution have not been assailed by the defendant in the judgment; so far as he is concerned there has been an acquiesence in the order and execution.

The motion was made by the executor as a substitute for the action which might have been brought, and in which the executor would not only have been entitled to revive

the judgment and have execution, but would have recovered a bill of costs (*Op. of* Bosworth, 22 *How.*, 183).

Mr. Starbuck, the executor, by the motion appealed to the equitable powers of the court. That motion was a simple and summary substitute for an action which he might have maintained. The equitable power of the court was exercised when the order was granted, and it was in the power of the defendant to avoid it, but it was not absolutely void (3 *Cowen*, 39 ; *The Union Bank* agt. *Bush*, 36 *N. Y.*, 636).

Personal representatives may collect (*Code*, § 283). Under the former practice, if the execution was issued too late, and was in fact irregularly issued, it was not void, but only voidable (*Woodstock* agt. *Bennett*, 1 *Cowen*, 711).

It was determined in *Bank of Genessee* agt. *Spencer*, that an execution issued after five years without leave of the court is not void, but only voidable, and that whether such an execution should be set aside or not, was a matter resting in the discretion of the court (*Op.* Denio, 18 *N. Y.*, 150 and 155 ; *Winebrewer* agt. *Johnson*, 7 *Abb.*, *N. S.*, 202).

The learned counsel for the defendants, in his elaborate argument submitted in this case, insists that the judgment against Holmes had ceased to be a lien on his real estate, and that the sale and sheriff's deed were, therefore, void.

In support of this position it is insisted that the amendment of the Code in 1851 changed the rule in reference to the liens of judgments, and restricted the lien to ten years. Section 282 of the Code does not in terms repeal the provisions of the Revised Statutes in respect to judgments.

It is further insisted by the learned counsel that section 282 expressly limits the time to ten years as to the defendant in the judgment, and that after the lapse of ten years there is no lien upon the real estate of the judgment debtor.

Whether that is the correct rendering of the provisions

of the Code is not necessarily involved in the decision of this case.

As to purchasers, creditors, or mortgagees in good faith, the time during which a stay or an appeal shall have been effectual shall not constitute any part of the ten years.

It is insisted that the words used in connection with the stay as to creditors, purchasers, and incumbrancers in good faith, declare that the time of such stay shall also be substracted from the ten years, in which the lien shall exist, against the defendant in the execution.

But suppose that to be granted, the sale upon the judgment in this case can be upheld and declared effectual as to the defendant in the judgment and, execution unless the provisions of the Revised Statutes are repealed in respect to the effect of a judgment upon the property of a judgment debtor.

By an amendment of the Code in 1851, it was provided, in section 291, that the existing provisions of law not in conflict with the chapter containing that section "relating to executions and their incidents, the property liable to sale on execution * * * shall apply to the executions described by that chapter."

The execution, therefore, issued to sell the premises in question, was authorized by the 291st section of the Code and the provisions of the Revised Statutes.

By section 30 of *R. S.* (found at page 371 of 2 *R. S., Edms. ed.*), it was provided that " all judgments shall bind and be a charge upon the lands, &c., of any person, against whom any such judgment shall be rendered which such person may have at the time of docketing, or which such person shall acquire at any time thereafter ; and such real estate and chattels real, shall be subject to be sold upon execution to be issued on such judgment.

Then follows section 4, in respect to purchasers in good faith and subsequent incumbrancers, with a limitation as to them of ten years.

The counsel correctly maintains that the lien, as to such persons, continued only ten years, and that the issuing of an execution did not extend, as to them, the lien beyond ten years (5 *Cowen*, 294; 18 *Wend.*, 621; 9 *Wend.*, 157; 1 *Ed. Ch.*, 619).

And it was held that the sale must actually take place within the ten years, as to such persons as the statute named in restricting the lien to ten years.

At common law, the real estate could not be sold on an execution, and the early statutes which authorized the sale have been adopted, and the Revised Statutes, in § 3, prescribed the effect of a judgment on real estate of the debtor.

As to the debtor, a sale of his real estate could be made, without the docket of a judgment in the county where his realty was situated, and it became effectual to pass his title, in virtue of the provision of the statute, whether lien existed or not (*Correy* agt. *Comeleus*, 1 *Barb.*, ch. 582; *Haverly* agt. *Becker*, 4 *N. Y.*, 169; *Blasson* agt. *Barry*, 1 *Lansing*, 192).

In the last case, SMITH J. says: "If the lands had been sold on the execution while he held the title, the sale would have been effectual." In that case no docket had been made of the judgment against Cheney, one of the debtors alluded to in the opinion, and in the absence of the docket, of course no lien was created.

No provision of the Code can be found, which expressly takes away the effect given to judgments as against the debtor and his real property by the Revised Statutes.

But section 289, in respect to form of the execution, contains a provision entirely in harmony with the practice prevailing under the revised statutes.

Sub. 1 of § 289, provides that the execution "shall require the officer to satisfy *the judgment* out of the personal property of such debtor, *and if sufficient* personal property cannot be found, *out* of the real property belonging to him on the

day when the judgment was docketed in the county, *or at any time thereafter."*

By these last words it will be seen that no limit is placed upon the officer as to the real estate of the debtor.

These words may be considered in construing the provisions of the Code, upon the question of the right to sell after ten years from the docketing of the judgment.

These words were in the section of 1849, and it remains as it was then, unamended by the Legislature.

Then the practice was well settled that the lands of the debtor might be sold, although ten years had elapsed from the docket of the judgment (*Scott* agt. *Howard,* 3 *Barb.*, 319; 7 *Cowen* 540; 2 *Paige*, 54).

The conclusion cannot be resisted that the sale and deed, carried the title of the judgment debtor, and that the execution was properly enforced out of the debtor's real estate.

The plaintiff is a purchaser in good faith, and derived a good title to the premises as against the defendants in this action, who have no color of title or equity in the premises.

The statute declares them trespassers, and this action is maintainable without any previous notice to quit (*Livingston* agt. *Tanner*, 14 *N. Y.*, 64; *Torrey* agt. *Torrey*, 14 *N. Y.*, 430).

There must be judgment for the plaintiff, for the recovery of the possession of the premises, with $25 damages.